F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 23 2007

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BETTY JO SMITH, Individually, and as Surviving Spouse of Earl Smith, Deceased, MICHAEL SMITH, Individually, KENNETH SMITH, Individually, KEITH SMITH, Individually, and STEVEN SMITH, Individually,<br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., SAM'S WEST, INC., and SAM'S REAL ESTATE BUSINESS TRUST,<br>Defendants. | 07-CV-01782-WYD-MJW<br><br>Civil Action No. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Betty Jo Smith, Individually, and as Surviving Spouse of Earl Smith, Deceased, Michael Smith, Individually, Kenneth Smith, Individually, Keith Smith, Individually, and Steven Smith, Individually, Plaintiffs, by and through their attorneys Jose, Henry, Brantley, MacLean & Alvarado, LLP, and files this their Original Complaint against Wal-Mart Stores, Inc., Sam's West, Inc. and Sam's Real Estate Business Trust, Defendants, and would show as follows:

### PARTIES

1. Betty Jo Smith is and was at all times pertinent hereto a resident of Thornton, Adams County, Colorado.

2. Prior to his death, Earl Smith, Deceased, was at all times pertinent hereto a resident of Thornton, Adams County, Colorado.

3. Earl Smith died on July 4, 2007 due to complications relating to injuries sustained as a result of the events giving rise to this controversy.

4. Betty Jo Smith is the surviving spouse of Earl Smith, Deceased.

6. Michael Smith is a surviving child and heir of Earl Smith, Deceased.

7. Kenneth Smith is a surviving child and heir of Earl Smith, Deceased.

8. Keith Smith is a surviving child and heir of Earl Smith, Deceased.

9. Steven Smith is a surviving child and heir of Earl Smith, Deceased.

10. Defendant Wal-Mart Stores, Inc. (Wal-Mart) is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 702 Southwest 8th Street, Bentonville, Arkansas 72716-0555.

11. Defendant Wal-Mart was at all times pertinent hereto doing business in the State of Colorado.

12. Defendant Wal-Mart has designated The Corporation Company, located at 1675 Broadway, Suite 1200, Denver, CO 80202, United States, as its registered agent.

13. Defendant Sam's West, Inc. (Sam's) is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Arkansas, with its principal place of business located at 702 Southwest 8th Street, Bentonville, Arkansas 72716-0555.

14. Defendant Sam's was at all times pertinent hereto doing business in the State of Colorado.

15. Defendant Sam's has designated The Corporation Company, located at 1675 Broadway, Suite 1200, Denver, CO 80202, United States, as its registered agent.

16. Defendant Sam's Real Estate Business Trust (Sam's Real Estate) is a statutory trust organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 702 Southwest 8th Street, Bentonville, Arkansas 72716-0555.

17. Defendant Sam's Real Estate was at all times pertinent hereto doing business in the State of Colorado.

18. Defendant Sam's Real Estate has not designated a registered agent in the State of Colorado. Defendant Sam's Real Estate has designated The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its registered agent in the State of Delaware.

19. Defendant Wal-Mart is the parent company of the wholly owned subsidiaries Defendants Sam's and Sam's Real Estate.

20. Defendant Sam's is the owner of the Sam's Club building located at 9601 Grant Street, Thornton, Colorado 80229 in front of which the events giving rise to this controversy occurred.

21. Defendant Sam's Real Estate is the owner of the property on which the Sam's Club building is located as well as the parking lot on which the events giving rise to this controversy occurred.

## JURISDICTION AND VENUE

22. The events giving rise to this controversy occurred in the parking lot of a Sam's Club located at 9601 Grant Street, Thornton, Adams County, Colorado 80229.

23. The amount in controversy in this case exceeds $75,000.

24. Diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.

25. Venue is proper pursuant to 28 U.S.C. § 1391.

26. The decedent, Earl Smith, left a will. However the will has not yet been admitted to probate. All Plaintiffs bring this case individually and on behalf of the Estate of Earl Smith.

## FACTS

27. In the afternoon of August 30, 2005, Betty Jo and Earl Smith, Deceased, drove into the parking lot of a Sam's Club located at 9601 Grant Street, Thornton, Colorado 80229.

28. At the time the incident in question occurred, Mr. Smith was driving the Smith's Gold 2000 Saturn LS2 4-Door vehicle, Colorado registration number 697CDT, and Mrs. Smith was sitting in the passenger seat.

29. After entering the Sam's Club parking lot, Mr. Smith drove southbound along the far west edge of the parking lot, towards the Sam's Club building.

30. Mr. Smith then turned west and parked within two parking spaces.

31. After Mr. Smith opened his door and realized that he had double parked, he shut his door and proceeded to back up, re-adjust his vehicle's position, and pull forward into a single parking space.

32. As Mr. Smith attempted to stop his vehicle, the brakes on his vehicle failed and Mr. Smith was unable to stop the vehicle.

33. In front of the parking space in which Mr. Smith attempted to park his vehicle was a chain link fence, approximately six feet high that runs north and south along the west edge of the Sam's Club parking lot.

34. On the other side of the chain link fence is an eighteen foot drop off of the parking wall into a greenbelt.

35. When Mr. Smith was unable to stop his vehicle from moving forward, his vehicle crashed through the aforementioned chain link fence, pushing the fence out from the fence posts.

36. The Smith's vehicle drove off of the eighteen foot parking wall, the vehicle's front end collided with the ground, and the vehicle then rolled forward, coming to a rest on its roof.

37. Mr. and Mrs. Smith were subsequently trapped inside the vehicle.

38. Immediately after the Smith's vehicle drove through the chain link fence and over the parking wall, a witness summoned a Sam's Club employee to call for help.

39. As soon as help arrived, Mr. and Mrs. Smith were extricated from their vehicle by Thornton Fire Department personnel.

40. Mrs. Smith was air lifted to St. Anthony Central Hospital by Flight for Life.

41. Mr. Smith was transported to St. Anthony Central Hospital by Thornton Ambulance.

42. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith has suffered severe and extensive physical as well as non-physical injuries.

43. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith's neck and back were broken, causing paralysis from her chest down.

44. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith is currently and forever will be unable to use her legs or her hands.

45. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith is currently and forever will be unable to feed herself.

46. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith has incurred a significant amount of past medical expenses and will incur a significant amount of future medical expenses as well as a result of her injuries.

47. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith

has incurred a significant amount of for past and present rehabilitation and nursing home services and will incur a significant amount of expenses for future rehabilitation and nursing home services as well as a result of her injuries.

48. As a direct and proximate result of the events giving rise to this controversy, Mrs. Smith has suffered and will continue to suffer a number of non-economic damages such as pain and suffering, emotional stress, loss of consortium, physical impairment and disability, and impairment of quality of life.

49. As a direct and proximate result of the events giving rise to this controversy, Mr. Smith suffered severe and extensive physical and non-physical injuries.

50. As a direct and proximate result of the events giving rise to this controversy, Mr. Smith suffered contusions, bruises and lacerations.

51. As a direct and proximate result of the events giving rise to this controversy, Mr. Smith's neck was broken.

52. As a direct and proximate result of this incident, Mr. Smith died on July 4, 2007 as a result of injuries related to this incident.

53. Prior to and up until his death and as a direct and proximate result of the events giving rise to this controversy, Mr. Smith incurred a significant amount of medical expenses as a result of his injuries.

54. Prior to and up until his death and as a direct and proximate result of the events giving rise to this controversy, Mr. Smith incurred a significant amount of expenses for rehabilitation and nursing home services.

55. Prior to and up until his death, and as a direct and proximate result of this incident, Mr. Smith suffered a number of non-economic damages such as pain and suffering, emotional

stress, physical impairment and disability, and impairment of quality of life.

## PREMISES LIABILITY

56. Paragraphs 1-55 are realleged and incorporated by reference as if fully included herein.

57. Defendants Wal-Mart, Sam's, and Sam's Real Estate's (hereinafter referred to collectively as "Defendants") conduct is governed by the Colorado Premises Liability Act, C.R.S. § 13-21-115.

58. Defendants owed Mr. and Mrs. Smith a duty to comport themselves with the standards set forth in the Colorado Premises Liability Act, C.R.S. § 13-21-115.

59. Pursuant to Colorado Law, including without limitation the Colorado Premises Liability Act, C.R.S. § 13-21-115(1), Defendant Wal-Mart is an authorized agent or a person in possession of the real property on which this incident occurred or a person legally responsible for the condition of or for the activities conduct or circumstances existing on the real property on which this incident occurred.

60. Pursuant to Colorado Law, including without limitation the Colorado Premises Liability Act, C.R.S. § 13-21-115(1), Defendant Sam's is an authorized agent or a person in possession of the real property on which this incident occurred, or a person legally responsible for the condition of or for the activities conducted or circumstances existing on the real property on which this incident occurred.

61. Pursuant to Colorado Law, including without limitation the Colorado Premises Liability Act, C.R.S. § 13-21-115(1), Defendant Sam's Real Estate is an authorized agent or a person in possession of the real property on which this incident occurred or a person legally responsible for the condition of or for the activities conduct or circumstances existing on the real property on which this incident occurred.

62. Upon information and belief, Defendant Wal-Mart exercised such control over the operations of the Sam's Club store, and specifically over the operations of its wholly owned subsidiaries Defendants Sam's and Sam's Real Estate, that Defendant Wal-Mart is liable for Mr. and Mrs. Smith's injuries under Colorado Premises Liability Act, C.R.S. § 13-21-115.

63. Pursuant to Colorado Law, including without limitation the Colorado Premises Liability Act, C.R.S. § 13-21-115(1), Mr. and Mrs. Smith were "invitees" of Defendants.

64. On the afternoon of August 30, 2005 Mr. and Mrs. Smith entered Defendants' land to transact business in which Mr. and Mrs. Smith and Defendants are mutually interested.

65. On the afternoon of August 30, 2005 Mr. and Mrs. Smith entered Defendants' land in response to Defendants' express or implied representation that the public is requested, expected, or intended to enter or remain.

66. On the far west edge of the Sam's Club parking lot on which the events giving rise to this controversy occurred there is an eighteen foot drop off of the parking wall into a greenbelt.

67. The only barrier protecting vehicles and persons from the eighteen foot drop was a flimsy chain link fence.

68. As can be seen from the injuries and damage suffered by Mr. and Mrs. Smith, the chain link fence was insufficient and incapable of protecting the public from falling or driving off the parking wall into the green belt.

69. Defendants knew or should have known of the danger of not erecting a barricade that could sufficiently protect the public from falling or driving off of the edge of the parking wall.

70. By not erecting a barricade that was strong enough to prevent the public from falling or driving off of the parking wall, Defendants failed to exercise reasonable care to protect the public, including Mr. and Mrs. Smith, against a danger that Defendants knew or should have known existed.

71. Further, by erecting a chain link fence, Defendants instilled in the public, including Mr. and Mrs. Smith, a false sense of security by making it seem as if the public was protected from the eighteen foot drop off of the parking wall when in fact they were not.

72. As a direct and proximate result of Defendants' unreasonable failure to exercise reasonable care in protecting the public from a danger that they knew or should have know about, Mr. and Mrs. Smith suffered severe and permanent economic and non-economic damages from which they will never recover.

### WRONGFUL DEATH

73. Paragraphs 1-72 are realleged and incorporated by reference as if fully included herein.

74. Plaintiffs' wrongful death claim is governed by the Colorado Wrongful Death Act, C.R.S. § 13-21-201, *et seq*.

75. Defendants, as owners and/or possessors of the Sam's Club parking lot in which the events giving rise to this controversy took place, owed the public, including Mr. and Mrs. Smith, a duty to protect the public from dangers located on their land.

76. Defendants failed to protect the public, including Mr. and Mrs. Smith, from dangers on their land by failing to erect a barricade strong enough to prevent the public from falling or driving off of an eighteen foot parking wall located at the west edge of the Sam's Club parking lot where the events giving rise to this controversy took place.

77. Due to Defendants' failure to exercise reasonable care, Mr. Smith was severely injured

        on August 30, 2005 when the car he was driving drove off the parking wall into the greenbelt eighteen feet below.

78. On July 4, 2007, Earl Smith died from complications resulting from his injuries incurred on August 30, 2005.

79. As a direct and proximate result of Defendants' unreasonable failure to exercise reasonable care in protecting the public from a danger that they knew or should have know about, Plaintiffs have incurred economic damages including, but not limited to, funeral and burial expenses.

80. As a direct and proximate result of Defendants' unreasonable failure to exercise reasonable care in protecting the public from a danger that they knew or should have know about, Plaintiffs have suffered, and will continue to suffer, non-economic damages including, but not limited to, grief, loss of companionship, impairment in the quality of life, inconvenience, pain and suffering, and emotional stress.

## SURVIVAL ACTION

81. Paragraphs 1-80 are realleged and incorporated by reference as if fully included herein.

82. All Plaintiffs bring claims under C.R.S. § 13-20-101.

83. One or more of the Plaintiffs qualify as the personal representative of the decedent.

84. The survival action is brought to recover all economic damages suffered by the decedent between the date of injury and the date of his death.

85. The decedent sustained medical, hospital and related expenses incurred by and charges against decedent prior to his death.

86. The expenses incurred were proximately caused by all Defendants' negligence.

87. The decedent's Estate incurred funeral expenses.

88.   These expenses were proximately caused by the Defendants' negligence.

## JURY DEMAND

89.   Plaintiffs request that this cause be set for trial before a jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Betty Jo Smith, Individually, and as Surviving Spouse of Earl Smith, Deceased, Michael Smith, Kenneth Smith, Keith Smith, and Steven Smith pray that they recover judgment of and from Defendants Wal-Mart Stores, Inc., Sam's West, Inc. and Sam's Real Estate Business Trust for Plaintiffs' actual and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with prejudgment interest, post-judgment interest, reasonable attorneys' fees, costs of court, and such other and further relief to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

s/ Rickey J. Brantley
Rickey J. Brantley
State Bar No. 02899730

**JOSE, HENRY, BRANTLEY, MacLEAN & ALVARADO, L.L.P.**
675 N. Henderson Street
Fort Worth, Texas 76107
(817) 877-3303
(817) 338-9109 (Telecopier)

**ATTORNEYS FOR PLAINTIFFS**

**Plaintiffs' Names and Address:**

Betty Jo Smith
8600 Ogden Street
Thornton, CO 80229

Keith Smith
7746 East Culver Street
Mesa, AZ 85207-1204

Steven Smith
19906 Victorian Way
Parker, CO 80138-3801

Michael Smith
509 Sierra Blanca
Saginaw, TX 76179

Kenneth Smith
9142 Oberon Road
Arvada, CO 80004-5222